IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KNOLLY EDWARDS,

     Plaintiff,

v.                                 CASE NO. 5:10-cv-286-RH-GRJ

UNKNOWN FEDERAL OFFICERS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff, an inmate serving a sentence in the custody of the United States Bureau of Prisons, initiated this case by filing a *pro se* complaint in the Middle District of Florida on the Middle District of Florida's civil rights complaint form for prisoners in actions under 28 U.S.C. § 1331 or § 1346. (Doc. 1.) This case was transferred to this Court on November 3, 2010. (Doc. 4.) Plaintiff is currently proceeding pursuant to a Second Amended Complaint. (Doc. 18.) The case is presently before the Court on Doc. 24, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. Plaintiff filed a response to the motion to dismiss, Doc. 27, and therefore this matter is ripe for review. For the following reasons, the undersigned recommends that the motion to dismiss be granted, and that judgment be entered in Defendants' favor.

## I. BACKGROUND

     Plaintiff alleges that he was employed by Federal Prison Industries ("FPI") at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna"). His position included breaking-down, disassembling, and salvaging parts from computers,

televisions, and other electronic items.  Plaintiff alleges that during his employment, he was exposed to thick clouds of dust that contained high levels of lead and cadmium. He alleges that Defendants did not provide him with any protective equipment to shield him from exposure to this dust, and that while he complained of exposure to the dust, Defendants led him to believe that the dust was safe.  Plaintiff alleges that workers who complained about exposure to the dust were fired or transferred to other penal institutions, and that he was transferred to the Federal Correctional Complex in Coleman, Florida ("FCC Coleman").

Plaintiff alleges that after being apprised of worker complaints, Federal Bureau of Prisons' Director Harley Lappin requested the Office of the Inspector General to conduct a review of the FPI's electronics recycling program in April 2006.  He states that the Occupational Safety and Health Administration ("OSHA"), the Federal Occupational Health Service ("FOH"), and the National Institute for Occupational Safety and Health ("NIOSH") conducted this investigation, and that NIOSH released a preliminary report in July 2008 that confirmed that glass breaking occurred in the recycling program without the use of respiratory protection.  Plaintiff alleges that during his employment with FPI, there was no "sawdust collection system" nor "glass breaking room" that would have minimized his exposure to heavy metal dust.  Plaintiff alleges that federal officers employed as foreman and forewomen in FPI threatened to terminate his employment if he complained about the hazardous conditions.

He alleges that he first learned about the affect on him of being exposed to heavy metal dust in October 2008, when the Office of the Inspector General released a report on the elements to which he was exposed.  Plaintiff alleges that in 2009, he

began experiencing digestive problems, acute respiratory symptoms, short-term

memory loss, muscle pain, headaches, problems urinating, and abnormal skin lesions.

He alleges that when he sought medical treatment, he was advised that his health

problems were the result of his previous employment at FPI.  He alleges that

immediately upon receiving this information, he began making administrative

complaints within the Federal Bureau of Prisons system.  He alleges that Defendants

failed to address the working conditions he complained of, and considered his

administrative complaints "moot or improper."  (Doc. 18, at 7.)

    Plaintiff alleges that Defendants advised him to use aspirin, antibiotic cream,

water, fiber supplements, breathing exercises, and muscle rub for his health issues.  He

alleges that Defendants have deprived him of adequate medical treatment in an effort

to conceal the severe injuries caused by the unsafe working conditions at FPI.

    Plaintiff's second amended complaint enumerates four claims for relief.

Plaintiff's first claim is that Defendants exposed him to unsafe, hazardous, and

dangerous working conditions by depriving him of proper protective equipment.  His

second claim is that Defendants subjected him to cruel and unusual punishment in

violation of the Eighth Amendment, by subjecting him to unsafe working conditions

without protective gear.  Plaintiff's third claim is that Defendants violated his First

Amendment rights by threatening to retaliate and actually retaliating against him for

complaining about the unsafe working conditions.  Plaintiff's fourth and final claim is

that Defendants violated his Eighth Amendment rights through deliberate indifference to

his medical needs.  Plaintiff seeks the following forms of relief: $5,000,000 in "general

compensation," $5,000,000 in punitive damages, and "immediate medical treatment by

a specialized outside medical practitioner experienced in respiratory treatment, dermatologist treatment, and other areas to which Plaintiff's injuries are factored." (Doc. 18, at 8.)

## II. DEFENDANTS' MOTION TO DISMISS

Defendants argue that to the extent that Plaintiff is seeking damages for injuries that he received during his employment at FCI Marianna, the exclusive remedy is a claim under the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126(c)(4). Defendants argue that the IACA is also the exclusive remedy for claims of improper medical treatment of a work-related injury. Accordingly, Defendants argue that Plaintiff's claims of work-related injury and deliberate indifference to medical needs should be dismissed, because those claims are properly brought only under the IACA. Defendants assert that the Court has no jurisdiction to hear these work-related claims, and in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted.

Defendants also argue that Plaintiff's claims of work-related injury and deliberate indifference to his medical needs should be dismissed because he has failed to exhaust his administrative remedies. Defendants allege that Plaintiff filed only one administrative complaint related to his instant claims, regarding exposure to toxic substances during his employment at FPI. Defendants allege that Plaintiff never filed any administrative complaints regarding insufficient medical care, and that those claims should therefore be dismissed.

Finally, Defendants argue that Plaintiff has failed to state a claim of deliberate indifference to his medical needs, because his complaint consists of only vague and

conclusory allegations related to this issue.

### III.  STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, .  ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to

*pro se* complaint).[1]

## IV. DISCUSSION

### (1) <u>Exposure to Unsafe Working Conditions</u>

Plaintiff's first and second claims pertain to his alleged exposure to toxic heavy metal dust during his employment with FPI at FCI Marianna.  He claims first that Defendants exposed him to "unsafe, hazardous, and dangerous working conditions by depriving Plaintiff of proper protective equipment," and second, that this exposure constituted cruel and unusual punishment.  Plaintiff's first claim – a tort claim – must be analyzed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674.  His second claim – based upon a violation of his Eighth Amendment rights – must be analyzed under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Defendants argue that the Court lacks subject matter jurisdiction to entertain both of these claims, because the exclusive remedy for claims of work-related injury is the IACA.  Defendants argue in the alternative that Plaintiff fails to state a claim upon which relief can be granted, because his claims are barred by the IACA.  The Court agrees in part, and for the following reasons, the undersigned recommends that Plaintiff's first and second claims be dismissed.

Plaintiff's first claim is subject to dismissal because the Inmate Accident Compensation Act is the exclusive remedy for tort claims brought as a result of work-related injuries.

---

[1]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

Congress created a scheme to compensate inmates for injuries sustained in the course of their penal employment-the Inmate Accident Compensation Act. *Cooleen v. Lamanna*, 2007 WL 2687319, *4 (3d Cir. Sept. 14, 2007). By statute, the Federal Prison Industries Fund pays "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4); *see also* 28 C.F.R. § 301.301 (regulating such claims). Federal prisoners seeking compensation for injuries sustained during penal employment are limited to the remedy provided by section 4126, as there "is no indication of any congressional purpose to make . . . 18 U.S.C. § 4126 non-exclusive." *United States v. Demko*, 385 U.S. 149, 152 (1966). This principle has been uniformly applied. *See Pickens v. Federal Bureau of Prisons*, 113 F. 3d 1246 (10th Cir.1997) (Table) (noting the magistrate judge properly found the IAC is an exclusive remedy); *Vaccaro v. Dobre*, 81 F. 3d 854, 857 (9th Cir.1996) (recognizing that 18 U.S.C. § 4126(c)(4) is a prisoner's exclusive remedy against the government for work-related injuries); *Wooten v. United States*, 825 F. 2d 1039, 1044 (6th Cir.1987) (explaining that section 4126 is the exclusive remedy for a federal prisoner injured in the performance of an assigned task while in a federal penitentiary and thus bars a prisoner's FTCA claim); *Aston v. United States*, 625 F. 2d 1210, 1211 (5th Cir., Unit B 1980) (finding *Demko* made it clear that section 4126 is the sole remedy against the government where an inmate's injury is work-related and that the cause of the injury is irrelevant so long as the injury occurred while the inmate was on the job).

*Nettles v. United States*, No. CV206-128, 2008 WL 356622, at *3 (S.D. Ga. Feb. 6, 2008). Here, it is undisputed that Plaintiff seeks compensation for injuries allegedly sustained during the course of his employment with FPI at FCI Marianna. In *United States v. Demko*, the Supreme Court expressly held that the IACA was the "exclusive remedy" for such claims, and that an inmate could not bring a "supplemental" claim under the Federal Tort Claims Act. *Demko*, 385 U.S. at 152. *See also Smith v. United States*, 561 F. 3d 1090, 1099 (10th Cir. 2009); *Cooleen v. Lamanna*, 248 F. App'x 357, 362 (3d Cir. 2007); *Ellis v. Fed. Prison Indus.*, 95 F. 3d 54, 54 (5th Cir. 1996). Accordingly, Plaintiff's first claim is

due to be dismissed.

Plaintiff's second claim –  that Defendants violated his Eighth Amendment rights and subjected him to cruel and unusual punishment by subjecting him to unsafe working conditions –  arises under *Bivens*.  Defendants do not distinguish between Plaintiff's tort claims and constitutional claims in their motion to dismiss, and argue that all claims of exposure to unsafe working conditions are subject to dismissal because IACA is Plaintiff's exclusive remedy.  The law, however, is not settled on the question of whether IACA bars *Bivens* constitutional claims as well as tort claims that arise from work-related injuries.  *See, e.g.*, *Smith*, 561 F. 3d at 1103 (holding that IACA only bars tort claims, not *Bivens* claims); *Bagola v. Kindt*, 131 F. 3d 632, 645 (7th Cir. 1997) (same); *Vaccaro v. Dobre*, 81 F. 3d 854, 857 (9th Cir. 1996) (same).  *Compare Springer v. United States*, No. 99-6276, 2000 WL 1140767, at *1 (6th Cir. Aug. 8, 2000) (holding that IACA bars both tort claims and *Bivens* claims); *Walls v. Holland*, No. 98-6506, 1999 WL 993765, at *1 (6th Cir. Oct. 18, 1999) (same); *Fraley v. DOJ*, No. 96-5666, 1997 WL 225495, at *1 (6th Cir. May 1, 1997) (same). While the law is unsettled on this issue the Court need not address the issue of whether Plaintiff's *Bivens* claim is barred by the IACA, because Plaintiff's claim of exposure to dangerous working conditions does not rise to the level of a constitutional violation.

Plaintiff's Eighth Amendment claim essentially is a claim that prison officials were deliberately indifferent to his safety when they subjected him to an unsafe working environment.  "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3)

by conduct that is more than mere negligence." *Richardson v. Johnson*, 598 F. 3d 734, 737 (11th Cir. 2010) (quoting *Farrow v. West,* 320 F. 3d 1235, 1245 (11th Cir.2003)). In the workplace safety context, "prison officials are deliberately indifferent when they 'knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful.' *Smalls*, 2007 WL 1827465, at *7 (quoting *Ray v. Mabry,* 556 F. 2d 881, 882 (8th Cir.1977); citing *Morgan v. Morgensen,* 465 F. 3d 1041,1045 (9th Cir. 2006); *Jackson v. Caine,* 864 F. 2d 1235, 1246 (5th Cir.1989); *Franklin v. Kansas Dep't of Corrections,* 160 F. App'x 730, 736 (10th Cir. 2005)). "[M]ere failure to provide proper instructions or safety devices for use on prison work details does not constitute deliberate indifference." *Smalls*, 2007 WL 1827465, at *7. Rather, such claims sound in negligence. Deliberate indifference is found "when a prison official knowingly compels a prisoner to perform work that involves an imminent threat of serious physical harm posing a danger to the prisoner's life or health." *Id.* at *8.

In this case Plaintiff's allegations – even liberally construed -- support a claim of negligence, rather than a constitutional violation. Plaintiff alleges that prison officials failed to provide him with adequate protective equipment in his work with FPI, but he does not allege that the officials knew of a risk of serious harm to Plaintiff or that they knowingly disregarded that risk. "To convert conduct that does not even purport to be punishment into 'cruel and unusual punishment, defendants must demonstrate more than ordinary lack of due care for the prisoner's interests or safety." *Arnold v. South Carolina Dep't of Corr.*,

843 F. Supp. 110, 113 (D. S.C. 1994) (quoting *Whitley v. Albers,* 475 U.S. 312,

319 (1986)).  The Court, therefore, concludes that Plaintiff has alleged, at best,

that the conduct of prison officials evidenced a lack of due care but that the claim

as alleged  does not rise to the level of deliberate indifference.  Accordingly, the

Plaintiff's *Bivens* claim should be dismissed for failure to state a claim upon

which relief can be granted.

### (2) First Amendment claim

Plaintiff alleges that Defendants violated his First Amendment rights by

"threatening to and/or retaliating against Plaintiff for his complaints regarding the unsafe

and hazardous working conditions."  (Doc. 18, at 8.)  This claim is due to be dismissed

because Plaintiff has failed to exhaust his administrative remedies.

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to

exhaust all available administrative remedies before filing an action challenging prison

conditions.  "This requirement is a 'pre-condition to suit' that must be enforced even if

the available administrative remedies are 'futile or inadequate.'" *Logue, v. Pearson,*

2011 U.S. Dist. LEXIS 66950, *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d

1279, 1285-86 (11th Cir. 2005)).  Exhaustion is mandatory under the PLRA, and

unexhausted claims are not permitted.  *See Jones v. Bock,* 549 U.S. 199, 211 (2002).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is

considered a matter in abatement under Fed. R. Civ. P. 12(b) and, thus, is treated like a

defense of lack of jurisdiction.  *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir.

2008)*.*  Deciding a motion to dismiss for failure to exhaust administrative remedies

requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082

(11th Cir. 2008).  The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082.  If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*

"Where exhaustion–like jurisdiction, venue, and service of process–is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record."  *Bryant*, 530 F.3d at 1376.  Affording the district court this discretion advances the purposes of the PLRA: "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement[.]" *Id.* at 1376-77 (internal citations omitted).

To exhaust his administrative remedies, the Plaintiff in this case was required to file a form BP-9 with the warden of the institution within 20 days of the alleged retaliation or threat or retaliation.  28 C.F.R. 542.14(a)*; Okpala v. Drew,* 248 F. App'x 72 (11th Cir. 2007); *Martin v. Zenk,* 244 F. App'x 974 (11th Cir. 2007).  An appeal to the director using the form BP-10 was also required following the warden's decision.  28 C.F.R. 542.15(a).  The final administrative step would have been an appeal to the general counsel on a form BP-11.  *Id.*

Plaintiff contends that he exhausted his administrative remedies. However, Defendants' motion and attached affidavit and exhibits set forth uncontroverted facts showing that Plaintiff failed to fully exhaust his First Amendment claim. Plaintiff filed an administrative remedy request pertaining to the exposure to toxic dust while working at FPI. In that request, he claimed that Defendants subjected him to cruel and unusual punishment by exposing him to toxic dust, but did not mention any threats of retaliation or actual retaliation. It is thus clear that Defendants' motion to dismiss Plaintiff's First Amendment claim for failure to exhaust administrative remedies is due to be granted. *See Turner*, 541 F.3d 1082.

Alternatively, even assuming *arguendo* that Plaintiff had exhausted his administrative remedies, his First Amendment claim would be subject to dismissal for failure to state a claim upon which relief can be granted. To establish an actionable First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley* 532 F. 3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F. 3d 1247, 1250, 1254 (11th Cir. 2005)). The Eleventh Circuit has held that a plaintiff suffers adverse action if the defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from exercising his First Amendment rights. The plaintiff does not have to show that his own exercise of First Amendment rights has been chilled. *Bennett,* 423 F. 3d at 1254.

Here, the only factual allegations related to Plaintiff's First Amendment claims

are as follows:

> 8. Workers who made consistent complaints about the lead and cadmium exposures were either fired or transferred to another penal institution.
>
> 9. Plaintiff was transferred to Federal Correctional Complex, Medium, Coleman, Florida on or about. [sic]
>
> 18. Various unknown federal officers employed as foreman and/or forewomen were ignorant to Plaintiff's concerns and complaints regarding the toxic exposures, and threatened to terminate Plaintiff's employment if Plaintiff had a problem working in the hazardous conditions.

(Doc. 18, at 5-6). These allegations are insufficient to state a First Amendment claim

for retaliation. At best, Plaintiff alleges that he was transferred to FCC Coleman as a

result of his complaints about the working conditions at FCI Marianna, though this is far

from clear in the complaint.[2]

> Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (per curiam). While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials. *See Bridges v. Russell,* 757 F.2d 1155, 1157 (11th Cir.1985). Such retaliatory transfers violate an inmate's First Amendment rights. *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989) (per curiam).

*Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009). In *Williams*, the Eleventh

Circuit held that the Plaintiff failed to state a claim for retaliatory transfer against two

defendants when his only statement about their participation in his transfer was the

statement that the defendants "subjected [him] to a retaliatory negative transfer twice as

---

[2] While the Court is not converting Defendants' motion to dismiss into a motion for summary judgment, and therefore is not considering matters outside the pleadings except as related to exhaustion of administrative remedies, the Court notes that Defendants allege that Plaintiff was transferred to FCC Coleman at his own request. (Doc. 25, at 2.)

far from [his] family." *Id.* The court held that this statement did "not raise [Plaintiff's]

right to relief against [the defendants] above the speculative level." *Id.* (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Similarly, here Plaintiff's

statements that workers who complained about working conditions were threatened or

transferred, and that he was transferred, are conclusory and do not bring his claim

above the speculative level. In the absence of any specific facts about his transfer,

Plaintiff fails to state a First Amendment claim for retaliatory transfer.

### (3) Deliberate indifference to serious medical needs claim

Plaintiff's fourth and final claim is that Defendants violated his Eighth

Amendment rights "by being deliberately indifferent to Plaintiff's needed specialized

'outside' medical treatment for his work-related injuries." (Doc. 18, at 8.) In support of

this claim, Plaintiff alleges the following:

> 24. The Defendants, FCC Coleman Medium Medical Department,
> has instructed Plaintiff to began [sic] using aspirin for his headaches,
> antibiotic cream for his lesions, to drink excessive water for his urinary
> problems, take fiber supplements for his digestive problems, breathing
> exercises for his respiratory problems, and muscle rub for his muscle
> pains, all because Plaintiff is financially capable of purchasing these
> products from the commissary.
> 25. The Defendants, FCC Coleman Medical Department, has
> deprived Plaintiff of adequate medical treatment for the foregoing injuries
> in efforts of concealing the severe injuries caused by the Defendants'
> subjecting Plaintiff to the foregoing unsafe and hazardous working
> conditions.
> 26. The Defendants, FCC Coleman Medical Department, refuses to
> allow the Plaintiff to be seen, observed, diagnosed, and/or treated by a
> contractor medial specialist in efforts of concealing the severe injuries
> caused by the Defendants' subjecting Plaintiff to the foregoing unsafe and
> hazardous working conditions.

(Doc. 18, at 7.) Defendants argue that this claim should be dismissed for failure

to exhaust administrative remedies.  As with his First Amendment claims, Plaintiff contends that he exhausted his administrative remedies.  However, Defendants' motion and attached affidavit and exhibits set forth uncontroverted facts showing that Plaintiff failed to fully exhaust the deliberate indifference claim.  Plaintiff filed an administrative remedy request pertaining to the exposure to toxic dust while working at FPI.  In that request, he claimed that Defendants subjected him to cruel and unusual punishment by exposing him to toxic dust, but did not mention that he had not received adequate medical care for his injuries.  It is thus clear that Defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim for failure to exhaust administrative remedies is due to be granted.  *See Turner*, 541 F.3d 1082.

Even if Plaintiff had exhausted his administrative remedies, his deliberate indifference claim would be subject to dismissal for failure to state a claim upon which relief can be granted.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.  "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  To establish the second element – deliberate indifference to the serious medical need –  the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979,

128 L.Ed.2d 811 (1994) (explaining that the plaintiff must show that the defendant was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference").

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 F. 2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F. 2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F. 3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F. 2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'") ( quoting *Bowring v. Godwin*, 551 F. 2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). For the same reason, the fact that jail medical personnel did not refer Plaintiff to an outside physician does not provide a basis for Eighth Amendment liability. *See Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

Here, Plaintiff alleged that the prison officials did provide him with treatment for his medical problems, but complains that the particular treatments were prescribed

"because Plaintiff is financially capable of purchasing these [treatments] from the commissary." (Doc. 18, at 8.) He further alleges that Defendants refuse to allow him to be treated by an outside physician in order to conceal the severity of his injuries. Plaintiff's conclusory statements are insufficient to state an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff does not allege that prison officials were aware that he had a serious medical need, nor does he provide any specific facts to support his claim that prison officials deliberately disregarded such medical needs. Indeed, Plaintiff alleges that he received medical treatment for his various conditions, but claims that these treatments were inadequate for his needs. As discussed above, a prisoner who receives treatment but wants a different type of care generally cannot show deliberate indifference. *Hamm* 774 F. 2d at 1575. As such, Plaintiff has not provided any specific facts that would support his claim of deliberate indifference and, accordingly, Plaintiff's deliberate indifference claim should be dismissed.

## V. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (Doc. 24) should be **GRANTED**, this case should be **DISMISSED** and judgment should be entered in Defendants' favor.

**IN CHAMBERS** this 24th day of October 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**